[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two companion cases were heard by the court on January 19 CT Page 2028 and 20, 2000. In file No. 98-577800S the complaint alleges that on or about June 13, 1997 defendant Marcia Ann Russell, a licensed bondsman, executed and delivered to the plaintiff State of Connecticut an appearance bond in the amount of $5,000 on behalf of the principal, Dick Joshua (a/k/a McSwain), a defendant in a criminal matter.
In file No. CV 98-577801S the complaint alleges that also on or about June 13, 1997 defendant Russell executed and delivered to the State of Connecticut an appearance bond in the amount of $100,000 on behalf of the principal, William P. McSwain, defendant in another criminal matter.
According to these complaints the bonds provided that if the said William P. McSwain (or Joshua) failed to appear for court ordered appearances, there would be a breach of the bonds, and the bonds would be forfeited by the court. The complaints further allege that McSwain (aka Joshua) failed to appear for scheduled court ordered appearances and that pursuant to General Statutes § 54-65a the appearance bonds were called and ordered forfeited by the court. The bond forfeitures were stayed for six months until January 16, 1998, after which the stays expired. The State of Connecticut has demanded that said defendant pay the forfeited bonds in the amount of $5,000 and $100,000 respectively, but the defendant has failed to do so.
The court finds the following facts. Detective Roland Levesque works for the State police in the Department of Public Safety within the special license and firearms unit. As such, he is responsible for licensing bail bondsmen. In 1996 the defendant applied for such a license so that she could provide bail bonds to defendants arrested in criminal matters. In order to obtain such a license the defendant was required to apply to the Commissioner of Public Safety for a license in accordance with General Statutes § 29-145. That statute provides in pertinent part as follows:
 Sec. 29-145. BONDSMEN TO BE LICENSED. Any person desiring to engage in the business of a professional bondsman shall apply to the Commissioner of Public Safety for a license therefor. Such application shall set forth under oath the full name, age, residence and occupation of the applicant, whether the applicant intends to engage in the business of a professional bondsman individually or in partnership or association with another or others, and, if so, the identity of each. It shall also set forth under oath a statement of the assets and liabilities of theCT Page 2029 applicant and whether he has been charged with or convicted of crime, and such other information, including fingerprints and photographs, as said commissioner from time to time may require. . . . (Emphasis added).
Additionally, the following statutes provide as follows:
 "§ 29-148 STATEMENT OF ASSETS AND LIABILITIES. Each professional bondsman licensed under the provisions of this chapter shall forthwith inform the Commissioner of Public Safety in writing of any material change in his assets or liabilities affecting responsibility as a bondsman and shall at any time, upon request of said commissioner furnish him with a statement under oath of his assets and liabilities, including all the bonds on which such bondsman is obligated."
"§ 29-147. RENEWAL, REVOCATION OR SUSPENSION OF LICENSE.
 Each professional bondsman licensed under the provisions of this chapter may apply for a renewal of his license upon renewal application forms provided by the Commissioner of Public Safety and requiring the disclosure of such information as said commissioner requires in determining whether or not such professional bondsman's financial responsibility remains unimpaired or whether for any other reason such bondsman's fitness to continue in such business has been otherwise altered since the issuance of any prior license. Said commissioner may suspend for a definite term or revoke any license issued under the provisions of this chapter if it appears to said commissioner that such licensee has been convicted of a felony in this state or elsewhere or is engaged in any unlawful activity affecting his fitness to continue in the business of professional bondsman or that his financial responsibility has been substantially impaired." (emphasis added)
In accordance with the statutory requirements for obtaining a license, the defendant filed a statement of financial responsibility with the Department of Public Safety. (Defendant's Ex. A) That statement indicated that her net worth was $87,753.00 (after subtracting her total liabilities of $102,055.00 from her total assets of $189,808.00).
The Administrative Guidelines and Rules of Professional Bondsmen set forth by the Department of Public Safety provide in pertinent part as follows:
"The following rules and regulations shall apply to all bondsmen:
CT Page 2030 1. The Special Licensing Firearms Unit shall determine the bail limit of each professional bondsman. The bail limit shall be determined by examination and evaluation of all assets and liabilities of each applicant. A MINIMUM BALANCE OF FIFTEEN THOUSAND ($15,000.00) MUST BE MAINTAINED AT ALL TIMES.
 2. The Special Licensing Firearms Unit shall not assign ANY VALUE
to the following types of assets:
a. Real or personal property held in survivorship form
b. Mortgages, real or personal
c. Insurance policies
d. Interest in any business
 e. Personal property, i.e., cash on hand, automobiles, trucks, machinery and fixtures, jewelry, furniture, furs, etc.
f. Stocks"
After examining the statement of professional responsibility submitted by the defendant, she was interviewed personally by Mr. Levesque. At that interview the defendant was told what her bond limitation would be and that she could not write a bond above that bond limitation. She was further told that she could not write any more bonds after reaching the bond limitation until prior bonds had been released. Although the statement submitted by the defendant listed her net worth as $87,753.00, certain items were disallowed by the Department of Public Safety in determining what the bond limitation should be. Thus, in accordance with the department's guidelines she was told by Mr. Levesque that her bond limitation would be $58,500. This notification was followed up by a letter from the Department of Public Safety which specifically stated: "Please Note: Bond Limit will be set at $58,500." (Plaintiff's Ex. 1)
It is undisputed that the defendant wrote the bonds in question in the amount of $5,000 (for Dick Joshua a/k/a William McSwain) and $100,000 (for William McSwain), (plaintiff's Exs. 4 5), that said McSwain failed to appear in Court, that the bonds were forfeited, and that the defendant has failed or refused to pay the forfeited bonds. CT Page 2031
The plaintiff has raised several defenses.
First. She claims that the plaintiff failed to follow its administrative guidelines by issuing a license in excess of the bond limits established by plaintiff's statement of financial responsibility. Also in File No. CV 98-577801S she claims that had the plaintiff correctly issued the license with the correct limits (of $50,500) the defendant would not have been able to write the bond in the amount of $100,000. The court finds this defense to have no merit. Clearly, the plaintiff knew and was told in person and in writing that her bond limit was $58,500. In order to support her claim, however, she testified that she was issued a license that allowed her a bond limitation of $585,000. She testified that she went to Mr. Levesque's office to pick up her license from Mr. Levesque's secretary and that the license itself gave her a bond limitation of $585,000. She claimed that she told the secretary that the $585,000 figure was a mistake but that the secretary assured her that it was not a mistake and that her limitation was in fact $585,000. The court does not find the defendant's testimony to be credible in this regard. Certainly she knew her limit could not be $585,000 when her net worth was at the most only $87,753.
Although the original of the license certificate stated the bail limit to be $585,000, the copy of the license shows a change which indicates the bail limit to be $58,500. (Ex. 2). The court finds the bail limit of $585,000 set forth on the license to be a typographical error (both on the license certificate, as well as on the Bondsman Identification form) issued to the defendant. Clearly, the defendant knew that she did not have sufficient funds to allow for a bail limit over $58,500. Yet she took the risk that McSwain (aka Joshuaj) might not appear in court when she issued the security bonds. Furthermore, she signed under oath the following statement on each bond. "I, the above named surety, understand that if the above-named defendant fails to appear, in accordance with the foregoing promises, I will be liable to the State of Connecticut for the above amount. (Exs. 4 and 5).
Second, defendant also claims by way of special defense that had plaintiff, its agents, servants and/or employees, provided her with information available to them as to the true identity of the principal, the forfeiture would not have occurred. The defendant presented no credible evidence as to what information the plaintiff had or should have had as to the true identity of CT Page 2032 the principal, nor did she show what duty the state had to her in this regard. It was her responsibility to check McSwain's (a/k/a Joshua's) background before issuing the bonds.
Third: The defendant claims that the plaintiff, its agents, servants and/or employees failed to take the necessary and appropriate steps to apprehend the principal and therefore breached its duty to the defendant. The court finds this defense has no merit. At the defendant's request the plaintiff did in fact offer to assist the defendant in apprehending the fugitive who had failed to appear, and it did so for a period of five months through the Division of Criminal Justice Fugitive Squad until said fugitive squad had disbanded. However, plaintiff had no obligation to continue with its assistance. Furthermore, the defendant issued the following statement to said Fugitive Squad:
"I understand that this request for assistance does not in any way extinguish or diminish my obligations under the terms of the Appearance and Bond."
In summary, the court finds in favor of the plaintiff on its complaints in both cases. The court further finds that the defendant's defenses have no merit. Connecticut P.B. § 38-23
provides: "Where bail has been posted by a bondsman or surety, such bondsman surety shall not be relieved of any obligation upon the bond except with the permission of the judicial authority and for good cause shown." After hearing all the evidence, the court finds that no good cause has been shown that would justify relieving the defendant of her obligation upon the bonds.
Accordingly, judgment may enter for the plaintiff in the amount of $105,000, plus costs.
Frances Allen Judge Trial Referee